**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MICHAEL J. BROWN, *

Plaintiff, *

v * Civil Action No. SAG-23-1498

CARLOS BIVENS, *Warden*, et al., *

Defendants. *

***

**MEMORANDUM OPINION**

Plaintiff Michael J. Brown filed this civil rights action alleging that Defendants Carlos Bivens, Warden; Roxbury Correctional Institution ("RCI") Medical Department; Crystal Jamison; and Corizon Medical failed to provide him with adequate medical care. ECF No. 1. Pursuant to this Court's Order, ECF No. 4, Brown filed an Amended Complaint naming Bivens, Jamison, and Corizon as defendants.[1] ECF No. 5. Defendants have moved to dismiss or, alternatively, for summary judgment to be granted in their favor. ECF Nos. 16, 22. Brown was informed of his right to respond to each motion pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), and he filed opposition responses to both Motions. ECF Nos. 17, 23. The Court finds that a hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons explained below, the Court will grant Defendants' Motions.

**Background**

**I. Brown's Allegations**

Brown, who was diagnosed with shingles, alleges that defendants "neglected their custody, care, and guardianship of [him] by allowing [his] skin to rot and deteriorate on [his] face which

---

[1] The case is and shall remain stayed as to defendant Corizon Health, Inc. pursuant to an automatic stay due to ongoing bankruptcy proceedings. *See* ECF Nos. 11, 15.

has left [him] in excruciating pain and [he] is now scarred for life." ECF No. 5 at 4. Brown states that his right eye and head "continue[] to discharge a puss and grayish substance" and that his head is covered in scabs. *Id*. He alleges that Corizon did not provide effective treatment and allowed the condition to deteriorate. *Id*. He alleges that Warden Bivens knew of his condition and failed to act until he filed this Complaint. *Id*. at 4-5. Brown alleges that Crystal Jamison, PA acted with deliberate indifference when she saw his condition and took no action, telling him, "I don't know anything about it." *Id*. at 5. Brown states that he is mostly blind in his right eye, which continues to leak puss, and that the blisters on his eye, face, and head cause him excruciating pain. *Id*.

**II. Defendants' Responses**

Defendant Crystal Jamison, a Certified Physician Assistant, moves to dismiss the Amended Complaint for failure to state a claim, or in the alternative, for summary judgment. ECF No. 16. In support of the Motion, Jamison submitted her declaration outlining Brown's relevant medical history as well as her own involvement in his treatment. ECF No. 16-2. In addition, Jamison submitted copies of Brown's medical records from March 2023 through November 2023. ECF Nos. 16-3 – 16-7.

Defendant Carlos Bivens, Warden at RCI, moves to dismiss the Amended Complaint, or in the Alternative, for Summary Judgment. ECF No. 22. Bivens argues that Brown failed to exhaust his administrative remedies, failed to state a claim, and that he is entitled to Eleventh Amendment and qualified immunity. ECF No. 22-1. Bivens submitted his affidavit, which states that he relied on the medical providers to provide adequate medical care to Brown and that he did not "interfere with, hinder, or delay medical treatment or care." ECF No. 22-2 at 2. Bivens also submitted the affidavit of Stacy Donivan, Administrative Remedy Coordinator at RCI, who states

that Brown filed no Request for Administrative Remedy ("ARP") grievances from his arrival at RCI on July 14, 2022, to December 27, 2023. ECF No. 22-3.

### III. Medical Records

Medical records submitted by defendant Jamison show that on March 13, 2023, Brown saw Coretha Tassi, RN, at the dispensary complaining of a rash on his head. ECF No. 16-3 at 31-33. Brown reported pain at 10/10 on the right side of his face. *Id*. at 32. The eye area was covered with shingles and swollen. *Id*. Jamison, who was on-site, ordered solumedrol 125 mg injection and ketorolac injection. *Id*. Thirty minutes after the injections, Brown reported improvement, and his pain was at 2/10. *Id*. Daily dressing changes were ordered, and Brown was advised not to scratch and to report any changes to medical. *Id*. Oral Medrol was ordered as well. *Id*. Jamison also examined Brown at this time and diagnosed varicella zoster affecting the right eye.[2] *Id*. She requested an urgent ophthalmology evaluation. *Id*. at 34; ECF No. 16-4 at 2-4. Jamison's request for an ophthalmology evaluation was approved on March 14, 2023. ECF No. 16-4 at 5.

On March 17, 2023, Brown saw a nurse after returning from a consult for hernia surgery off-site. ECF No. 16-3 at 26-27. Brown was stable and had no complaints; he was referred to follow up with a provider in two weeks. *Id*. at 27.

On March 27, 2023, Brown submitted a sick call request stating that he needed help with the pain from his shingles, and inquiring as to how long it will last. ECF No. 16-4 at 24.

On April 5, 2023, Brown saw Roseline A. Onyia, RN, for a scheduled sick visit. ECF No. 16-3 at 23-25. Brown reported uncontrolled pain at a 10/10 from shingles on his face and head.

[2] Jamison declares that Shingles is also known as herpes zoster. ECF No. 16-2 at 2. She states that the "disease is caused by the latent varicella-zoster virus ("VCV")," which is "the same virus that causes chickenpox, or varicella, in children."

*Id*. at 24. Nurse Onyia contacted the physician who ordered Tylenol #3 for pain and a follow up the next day. *Id*.

On April 19, 2023, Brown saw Jamison to follow up on his herpes zoster infection as well as for nail care. ECF No. 16-3 at 19-21. Brown declined the nail care. *Id*. However, he complained of "severe headaches post herpes zoster infection that affected the ophthalmic branch of the trigeminal nerve." *Id*. at 19. Jamison noted that Brown became tearful discussing the severity of his pain, noting that he has difficulty sleeping and often cannot come out of his cell due to the pain. *Id*. However, Brown reported that his sight was unaffected. *Id*. Jamison noted that an ophthalmology request had been placed, and that Brown is currently awaiting that appointment. *Id*. Jamison found that there were herpetiform lesions which were healing on the right side of Brown's scalp, which were "all closed with patches of yellow sloughing eschar." *Id*. at 20. There was redness and erythema on the right eye. *Id*. She prescribed Tylenol, Bacitracin, and Gabapentin. *Id*. at 21.

On April 23, 2023, Brown's chart was updated to note that Jamison had prescribed Gabapentin for short term use to treat post herpetic neuralgia; the prescription was approved by Joel Buzy, RMD. ECF No. 16-3 at 18.

On May 23, 2023, Brown submitted a sick call request complaining that although he had completed all the medication, he still has scarring, pain, discharge from his right eye, and bleeding of the scabs on his head. ECF No. 16-4 at 20.

On May 25, 2023, Brown saw Afre Getachew, MD for a chronic care visit regarding epilepsy, migraine, allergic rhinitis, low back pain, and herpes zoster. ECF No. 16-3 at 14-17. Brown reported that the lesions persisted, that there was some drainage, and that it was painful.

*Id*. at 14. Dr. Getachew assessed that the herpes zoster is stable and the lesions are healing. *Id*. at 16. He advised Brown to keep the lesion open in order for it to dry up. *Id*.

On May 26, 2023, Brown saw Everardo Hernandez-Quintela, MD at the Wilmer Eye Institute. ECF No. 16-4 at 26-31. Brown reported pain in the right periorbital region with intermittent blurring of vision in his right eye. *Id*. at 26. Dr. Hernandez-Quintela found large skin lesions with patchy hypopigmentation and overlying crusting extending from the right brow to right temple. *Id*. at 27. He found no involvement of the ocular globe. *Id*. at 28. He recommended erythromycin ointment twice daily and follow up with dermatology. *Id*.

On October 25, 2023, Brown saw Yoseph F. Teweldebrhan, NP for a chronic care visit regarding epilepsy, allergic rhinitis, and chronic lower back pain. ECF No. 16-3 at 5-8. It was noted that he had an old zoster lesion on the right forehead with no drainage. *Id*. at 6. Brown reported that he kept the lesions covered, denied pain, and reported no issue with vision. *Id*. at 7. NP Teweldebrhan advised him to "keep [the] area open for air dry and stop applying any oint[ment] without order." *Id*.

On November 28, 2023, PA Jamison updated Brown's chart to reflect that he had seen general surgery regarding an abdominal mass and returned with a recommendation for local exploration and hernia repair. ECF No. 16-5 at 31-32. The chart was updated again on December 1, 2023, to indicate that Brown had been approved for the surgery. *Id*. at 35.

On December 7, 2023, Brown saw Kyle Smith, MD regarding open lesions on the right side of his scalp. ECF No. 16-5 at 30. Dr. Smith noted that Brown has had persistent hypopigmentation of the skin and some postherpetic neuralgia, but that he has not had open sores until very recently. *Id*. Dr. Smith diagnosed a superficial bacterial infection, probably impetigo, and found no evidence of recurrent zoster. *Id*. He prescribed doxycycline and an antibiotic

ointment and sent a culture for testing. *Id*. On December 11, 2023, the lab results indicated a few white blood cells, a few gram-positive cocci in pairs, and a few colonies of coagulase negative staphylococcus. ECF No. 16-6 at 15.

**Standard of Review**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The court may "consider documents attached to the complaint, *see* Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[.]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' Motions are styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because Defendants filed motions styled as a motion to dismiss, or in the alternative, for summary judgment, Brown was on notice that the Court could treat the Motions as motions for summary judgment and rule on that basis. In addition, Brown responded to both defendants' Motions. ECF Nos. 21, 24.

In his response to Jamison's Motion, Brown states that he intends to seek discovery in the form of interrogatories, affidavits, and photographs. ECF No. 21. Specifically, Brown states

Jamison's Motion is premature because there are photographs of his injuries that will validate his claims. *Id*. Brown's request is construed as a request for discovery pursuant to Federal Rule of Civil Procedure 56(d) which provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:
>
> (1) Defer considering the motion or deny it;
> (2) Allow time to obtain affidavits or declarations or to take discovery; or
> (3) Issue any other appropriate order.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641

(D. Md. 2011), *rvs'd on other grounds*, (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

Here, Brown suggests that the evidence he seeks, specifically photographs of his injuries, will "validate" his claims. ECF No. 21. However, Brown fails to provide any explanation in either of his opposition responses to explain what essential facts would be obtained through discovery. Presumably, Brown anticipates that photos of his injuries would establish that he suffered from a serious medical condition. However, that Brown suffered from a serious medical condition is not a fact in dispute; the parties agree that he suffered from ophthalmic shingles, a painful eye infection the symptoms of which include pain, burning, tingling, sensitivity to touch, fluid-filled blisters that break open and crust over, itching, and possible vision loss. ECF No. 16-2 at 2. Brown makes no argument as to why discovery would assist him in demonstrating that any genuine issue of material fact exists for trial as to whether defendants were deliberately indifferent to his serious medical need. The Court will therefore proceed to the merits of defendants' Motions.

## Discussion

### I. Defendant Crystal Jamison, PA

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth

Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King*, 825 F.3d at 218; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto*, 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

After a serious medical need is established, a successful claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "Actual knowledge or awareness on the part of the alleged

inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Brown asserts that Jamison allowed his "skin to rot and deteriorate" leaving him "in excruciating pain" and "scarred for life." ECF No. 5 at 4. He alleges that she "acted with deliberate indifference after seeing [his] condition, took no action," and "in response to [his] blistering face," stated, "'I don't know anything about it.'" *Id*. at 5. For her part, Jamison agrees that Brown's shingles is an objectively serious medical need. ECF No. 16-1 at 10. However, she declares that when Brown appeared with shingles on March 13, 2023, she "immediately provided treatment for [Brown's] shingles that met or exceed the standard of care, including prescribing an appropriate antiviral medication, corticosteroids, pain medications, and submitting an urgent ophthalmology consultation." ECF No. 16-2 at 4. She denies that she stated that she did not know anything about his blistering face. *Id*. When Jamison saw Brown again on April 19, 2024, she observed redness in the right eye, and "healing herpetiform lesions, all closed with patches of yellow sloughing eschar (dead tissue or scabs)." *Id*. at 5. She recalled that Brown complained of severe headaches but stated that his "sight was unaffected." *Id*. In response to Brown's complaints, Jamison discussed a plan of care with the Regional Medical Director and prescribed Bacitracin topical ointment, Tylenol, and Gabapentin. *Id*.

The medical records reflect that Jamison aggressively treated Brown's shingles on the occasions she saw him. Even if she made a statement about not knowing anything about Brown's blisters, the medical records are clear that when Jamison encountered Brown suffering from shingles, she adequately treated him. Furthermore, there is no evidence or allegation that Jamison saw Brown following the April 18, 2024, appointment. However, during the subsequent months, he continued to receive care for shingles and related problems, including seeing providers on May 25, 2023, October 25, 2023, and December 7, 2023, as well as an outside ophthalmologist on May 26, 2023. *Id*. at 5-7. He was regularly prescribed pain medication, ointments, and antibiotics when necessary and appropriate. *Id*. There is no allegation or evidence that Brown submitted sick calls complaining of complications due to shingles that went unanswered or otherwise requested treatment that was denied.

Viewing the evidence in the light most favorable to Brown, the Court concludes that he has not presented that Jamison was deliberately indifferent to his serious medical needs. Accordingly, the Court finds that there is no genuine issue of material fact in dispute and Jamison is entitled to summary judgment in her favor.

**II. Warden Bivens**

Defendant Warden Carlos Bivens contends that Brown's Amended Complaint is subject to dismissal pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e, because his claims have not been properly presented through the administrative remedy procedure. ECF No. 22 at 11-13. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
>
> 42 U.S.C. § 1997e(a).

A claim that has not been exhausted pursuant to the PLRA may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). The Supreme Court has stated that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake,* 578 U.S. 1174, 136 S. Ct. 1850, 1859 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase v. Peay*, 286 F. Supp. 2d 523, 529-30 (D. Md. 2003). Exhaustion is also required even where the specific relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741. As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (noting that no distinction is made with respect to exhaustion requirements between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. Md. Code Ann., Corr. Servs. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional Administrative Remedy Procedure ("ARP") process, before filing a grievance with the IGO. *See id.* § 10-206(b). The Maryland Department of Public Safety and Correctional Services has made an ARP available to Maryland State prisoners for "inmate complaint resolution." *See* generally *id.* §§ 10-201 *et seq.*; Code of Maryland Regulations ("COMAR") 12.07.01.01B(1) (defining ARP). Thus, before filing a grievance with the IGO, a prisoner is required, among other things, to make an initial request for an administrative remedy

with the Warden. *Id.* 12.07.01.04(B)(9)(a). If an ARP is filed and denied, the prisoner may appeal the denial within 30 days to the Commissioner of Correction.

If the Commissioner of Correction denies the appeal, the prisoner may file a grievance with the IGO, also within 30 days. C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. The prisoner must include in the grievance copies of the initial request or administrative remedy, the Warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii).

Exhaustion of administrative remedies must take place before the complaint is filed. In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *See Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *see also Blackburn v. S. Carolina*, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009) *aff'd*, 404 F. App'x 810 (4th Cir. 2010); *Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015).

Ordinarily a prisoner must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548

U.S. at 93. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Here, it is undisputed that Brown did not timely and properly exhaust the grievance process prior to filing his Complaint in this Court. Defendant Bivens submitted the affidavit of Stacy Donivan, Administrative Remedy Coordinator for RCI, dated December 27, 2023. ECF No. 22-3. Donivan declares that "[a] search of the institutional records maintained in the ordinary course of business at RCI shows that [Brown] has been incarcerated at RCI from July 14, 2022, to the present time, and shows that [Brown] has not filed any ARP grievances at RCI in the period of time from July 14, 2022, to the present." *Id*. Brown does not address the issue of exhaustion of administrative remedies in his opposition response. ECF No. 24.

The record is clear that Brown did not exhaust his administrative remedies prior to filing the Complaint, and there is nothing to suggest that he was prevented from so doing. Brown's claims are, therefore, unexhausted, and the claims will be dismissed against defendant Bivens without prejudice.[3]

**Conclusion**

For the foregoing reasons, Jamison's Motion, construed as a motion for summary judgment, is granted. Warden Bivens's Motion, construed as a Motion to Dismiss, is also granted.

[3] As the Complaint is dismissed without prejudice against defendant Bivens for failure to exhaust administrative remedies, the Court need not address Bivens's remaining arguments.

A separate Order follows.

August 30, 2024
Date

/s/
Stephanie A. Gallagher
United States District Judge